Debora K. BALFOUR, D.C., d/b/a
Chickasha Chiropractic
Clinic, Appellant,

v.

Debra Paul NELSON, individually, and Debra Paul Nelson as mother and next friend of Jeremy Sharay Phillips and Jerome Latray Phillips, minor children; Erhardt Krabbinhoft, Jr.; Waggoners Trucking Company; and Continental Insurance Company, Appellees.

No. 81569.

Supreme Court of Oklahoma.

Dec. 20, 1994.

---

Rick W. Bisher, Boettcher, Ryan & Martin, Oklahoma City, and Donald H. Horn, Chickasha, for appellant.

Stephen H. Buzin, Chickasha, for appellees.

WATT, Justice:

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

Debra Paul Nelson and her two children, appellees, were injured in an automobile accident and sought medical treatment from appellant, Debora K. Balfour, D.C. Nelson related that she was asserting claims against another party to recover for their injuries and that she had insufficient funds to pay for treatment at that time. The parties entered into a contract whereby Nelson agreed to pay for medical services either when she settled the personal injury claims or within three months after treatments ceased, whichever occurred first. Dr. Balfour began treating appellees in July of 1989.

Pursuant to 42 O.S.Supp. 1985 § 46, Dr. Balfour filed various lien statements covering her services to appellees. For Debra Nelson, lien statements were filed on March 28, 1990, in the amount of $3,994.60 and on July 9, 1990, in the amount of $5,057.40. For Jerome Phillips, lien statements were filed on August 22, 1989 in the amount of $310.00 and on October 16, 1989, in the amount of $705.00. For Jeremy Phillips, lien statements were filed on August 2, 1989, in the

amount of $474.00 and on October 16, 1989, in the amount of $610.00. Each of the second lien statements were cumulative, incorporating amounts and services included in the first filings. Treatment on each patient ceased, respectively, after the filing of a second lien statement. Appellant never received any payment for her services nor did she ever seek to enforce any of the above liens.

Upon discovering that appellees were about to settle their personal injury claims, appellant filed a third lien statement for each patient. The statements, all filed on October 26, 1992, were for the same services and in the identical amounts claimed in the second lien filings. Appellees thereafter settled their personal injury claims.[1] On October 28, 1992, appellant filed suit to foreclose her liens and sought pre-judgment garnishment of the appellees' settlement proceeds.

The Honorable Karen Hibbs, Special District Judge, Grady County, sustained appellant's motion for summary judgment for all *amounts* due, but denied her lien claims against the settlement proceeds. The court held that appellant's foreclosure action failed because she did not file it within one year of the filing of the lien statements, and that the October 26, 1992, refilings for the same services and amounts did not reactivate the extinguished liens. Based upon similar reasoning, the Court of Appeals affirmed the trial court's decision. This Court granted appellant's petition for writ of certiorari on July 11, 1994.

### ISSUE

■ The sole issue presented is whether a doctor, who filed a physician's lien statement against the personal injury settlement proceeds of her patient pursuant to 42 O.S.1991 § 46 but did not seek to enforce it within one year, can reestablish a lien claim against such proceeds by filing the same lien statement before the personal injury claim settled and before the statute of limitations ran on the underlying medical services contract. We answer this question in the affirmative.

### DISCUSSION

Title 42 O.S.1991 § 46[2] provides physicians with a statutory method for obtaining a lien against the proceeds of a patient's personal injury claim where the patient's injuries were caused by another. The statute requires that the doctor file a detailed statement with the appropriate county clerk and send certified copies of the statement to the effected parties. Section 46 does not set forth an arithmetical time limit within which a lien must be filed[3], mandating only that the filing and notice requirements be met "before the payment of any monies to the injured person, his attorney, or legal representative as compensation for such injuries or death." 42 O.S.1991 § 46(C). In the present case, the doctor followed the proper procedure for filing each of her lien statements and all were filed before appellees received any settlement proceeds.

The present dispute arises from the interpretation of § 46(D), which states:

The liens provided for in this section may be enforced by civil action in the district court of the county where the lien was filed. Such an action shall be brought within one (1) year from the time of the filing of the lien with the county clerk.

1. The settlement proceeds were ordered paid to appellees' attorney pending resolution of the doctor's lien claims.

2. Section 46 has not been amended since its enactment in 1985.

3. See, for example, the following lien statutes which direct that lien statements be filed within a specified period after the occurrence of some event: 42 O.S.Supp.1992 § 98—personal property production, alteration or repair liens (within sixty days after last furnishing of labor, money, material or supplies); 42 O.S.1991 § 112—threshers and combiners liens (within thirty days

after work is completed); 42 O.S.1991 § 142—mechanics and materialmens liens (within four months after material, equipment or labor last furnished/performed under contract); 42 O.S. 1991 § 146—oil and gas well liens (within one hundred eighty days after material, machinery, supplies, labor or services last furnished/performed under contract); 42 O.S.1991 § 150—mining property lien (within forty-five days after labor last performed). The statute at issue herein, 42 O.S.1991 § 46, does not contain such a mathematical "front end" date before which a lien statement must be filed.

The practice, pleading, and proceedings in the action shall conform to the rules prescribed by the Oklahoma Pleading Code [12 O.S.1991 § 2001, et seq.] to the extent applicable.

Both courts below held that the one year time limit set forth above effectively operates as a statute of limitations for bringing an action under § 46. Because appellant did not seek to enforce her previously filed liens within one year, the lower courts ruled that appellant's remedy under § 46 was terminated and her 1992 liens were unenforceable. For reasons set forth below, we find that the lower courts erred.

■ The primary goal of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in a statute. *Ledbetter v. Okla. Alcoholic Bev. Laws Enforcement Comm'n,* 764 P.2d 172, 179 (Okla.1988). "[I]n construing statutes relevant portions must be considered together, where possible, to give force and effect to each other. Further, the cardinal rule of statutory construction is to begin with consideration of the language used and courts should not read into a statute exceptions not made by the Legislature." *Id.* (footnotes omitted). Courts cannot ignore the terms prescribed by a statute creating a lien. *Riffe Petroleum Co. v. Great Nat'l Corp., Inc.,* 614 P.2d 576, 579 (Okla.1980).

■ Based upon a clear reading of the language used in § 46, we find that appellant has followed the letter of the law. Initially, we note that § 46 contains no prohibition against physicians filing more than one lien statement which covers the same medical services and amounts. Second, as previously set forth, appellant complied with subsection 46(C) by filing her 1992 lien statements before appellees received any payment as a result of their personal injury settlement. Finally, we hold that the one year time limit of subsection 46(D) operates as a statute of limitations *only insofar as it serves to bar a*

*physician from enforcing a particular lien after the first anniversary of its filing.* The expiration of the one year time limit does not extinguish a physician's ability to refile and enforce a later lien securing the same obligation which was timely filed pursuant to § 46.

■ Title 42 O.S.1991 § 23 states that "[a] lien is extinguished by the mere lapse of the time within which, under the provisions of civil procedure, an action can be brought upon the principal obligation." The underlying principal obligation in the case at bar was the written contract for medical services entered into by the parties. Under the provisions of civil procedure—namely 12 O.S.1991 § 95, First[4]—appellant could have maintained an action against her patients for five years after the contract ended. The present action was filed well within that five year period. "When the statute of limitations bars a debt, that bar serves to extinguish any lien securing the debt." *Fourth Nat'l Bank of Tulsa v. Appleby,* 864 P.2d 827, 834 (Okla. 1993). *See also State ex rel. Land Office Comm'rs v. Hall,* 191 Okla. 257, 128 P.2d 838, 840 (1942). The applicable statute of limitations did not bar an action on the debt at issue herein for five years.

■ It is apparent that the legislative intent of § 46 was to encourage physicians to provide medical services to persons who have been injured by another and have insufficient funds or insurance to pay for the services when delivered. We also believe that § 46 was designed to insure that physicians are paid for their services once their patients are compensated for their injuries. Conversely, we do not believe that the legislature intended to require physicians to sue their patients yearly to foreclose their liens, particularly where treatment is ongoing. Such a procedure would impose additional expenses in the form of court costs and attorney fees to patients who are already financially strapped,

---

4. Title 12 O.S.1991 § 95, provides in relevant part:
    Civil actions ... can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

First. Within five (5) years: An action upon any contract, agreement or promise in writing.

in addition to placing an undue strain upon the physician-patient relationship.

In *Balfour v. Jacobs*, 867 P.2d 1364 (Okla. App.1993), the appellant brought suit against the alleged tortfeasor and her liability insurer to foreclose a § 46 physician's lien. The appellees argued that appellant could not obtain a lien until the claimant obtained a judgment and urged that the alleged tortfeasor and her insurer could not be made a party to the action. The Court of Appeals disagreed, stating *inter alia:*

> If we were to agree with Appellees, then the lien could be defeated by the parties by simply waiting until the one year limitation period elapsed. The purpose of the statute would be thwarted.

*Id.* at 1366. The above quote applies to the present case as well. If the one year limit of subsection 46(C) served as an absolute bar to bringing an action under § 46, a physician's ability to utilize that section as the Legislature intended could be defeated by the parties by simply waiting for more than one year after the lien statement was filed to settle their claim. The purpose of the statute would indeed be thwarted by such a procedure.

## CONCLUSION

The expiration of the one year time limit of § 46(C) does not bar a timely refiling of a lien. Rather, the time limit operates only to prevent a physician from enforcing a particular lien after the first anniversary of its filing. A § 46 physician's lien filed before the injured patient has received any proceeds in settlement of her personal injury claim and before the statute of limitations has run on the underlying obligation is valid and enforceable if suit is brought to enforce it within one year. This is true regardless of whether the same services or amounts were included in a previously filed but unenforced lien.

Certiorari previously granted. The opinion of the Court of Appeals is vacated. The judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA and SUMMERS, JJ., concur.

KAUGER, J., concurs in result.

ALMA WILSON, J., dissents.

SIMMS, J., CONCURRING SPECIALLY:

I concur with the result of the majority opinion insofar as it finds the physician's lien is valid and protects her interest in the personal injury settlement proceeds. I write separately to point out that 42 O.S.1991 § 46(D) conflicts with the statutory physician's lien scheme enacted by the legislature, and results in such confusion that it defeats the purpose of the statute. It is impossible to reach any construction which gives effect to the provisions of § 46(D) without doing violence to the intent of the lien statute.[1]

It is with good reason that the majority opinion strains with the effort of trying to make sense of § 46(D) and applying it to the facts before us. The effect of § 46(A)(B) and (C) is to give physicians a lien upon any recovery a patient might receive from a tortfeasor who caused the injuries necessitating the medical services, and upon claims the patient might have by reason of the injuries suffered. The procedures required for perfecting the lien claim are set out in § 46(C) and are based on notice of the claim to those who will pay and receive the proceeds. That section requires that before payment of the money is made to the injured person or his representative, a written notice setting forth the particulars of the claim including the insurance policy, if any, must be sent to the person, firm or corporation against whom the claim is made, and to the injured person and his attorney. The claim must also be filed on the mechanic's and materialman's lien docket in the appropriate county.

The jarring words of § 46(D), requiring the lien to be enforced by filing suit within one year of filing the lien with the county clerk, conflict with the preceding provisions of the statute. The enforcement procedure of § 46(D) is unrelated to the effect and

1. See *Balfour v. Jacobs*, 867 P.2d 1364 (Okl.App. 1993).

purpose of the statute and unrelated to the processes by which the statute's purpose will be effected.[2] The time limitation of one year from filing with the county clerk for enforcing the lien makes no sense and requires a vain act, for there will not be any insurance proceeds or other funds to be foreclosed against within one year of receiving medical treatment and filing with the county clerk. The case before us is typical. The usual time period required for an injured person to receive a judgment, settlement or compromise for injuries suffered as a result of negligence of another will greatly exceed a twelve month period. That is common knowledge. If a time limitation were needed for this physician's lien procedure, one which would make sense would be to allow a physician one year from the time he or she received notice of the patients recovery of a settlement.[3]

With the exception of § 46(D), the physician's lien provisions are nearly identical to the statutory lien granted hospitals in their patients' recoveries of settlement or other proceeds resulting from claims for injuries caused by third parties or accident, set forth at 42 O.S. 1991, §§ 43, 44. See *Vinzant v. Hillcrest Medical Ctr.*, 609 P.2d 1274 (Okl. 1980) and *Hillcrest Medical Ctr. v. Fleming*, 643 P.2d 868 (Okl.App.1982).

The hospital lien and the physician's lien are both made inferior to the lien or claim of the injured person's attorney. The practical effect of the application of § 46(D) as written, and as construed here by the majority, would be that when settlement for an injured patient/client is received, the attorney would be entitled to his claim and the hospital would be entitled to its claim, if it had sent notice to the involved payors and payees and filed in the county clerk's office. The physician, however, even if proper notice had been sent and filed, would be denied his lien claim unless a civil action had been brought within

one year from filing, or "refiling", the claim with the county clerk.

While we are not presented here with arguments urging us to strike this section, it is obvious to me that the legislature needs to be advised of this conflict within the statutory provisions, and the need of a legislative remedy.

Additionally, I am concerned that the majority opinion could be read as holding that the issue here is the validity of the physician's lien, in light of the physician's failure to comply with the requirement of § 46(D). This requirement, however ill advised, is only procedural, it does not concern substantive elements which give rise to the lien. The issue raised then is one only of priority, the effectiveness of this lien against other claims, not the physician's right and entitlement to a claim of lien. See, *Williamson v. Winningham*, 186 P.2d 644 (Okl.1947); *McCormack v. Air Ctr., Inc.*, 571 P.2d 835 (Okl.1977).

Inasmuch as the facts before us do not indicate that the priority of claims was involved in this case, the physician's failure to comply with the requirement of § 46(D) would not have affected her rights under the lien in any event.

I am authorized to state that Justice OPALA concurs in the majority opinion but also joins me in the views expressed herein.

---

**2.** The provisions of § 46(D) appear to have been taken from 42 O.S.1991, § 172. That section, however, pertains to enforcing liens on *real* property and is not applicable to the purposes the legislature attempted to serve with the enactment of this statutory protection for physicians in their treatment of patients injured by another.

**3.** See for instance *Regents of University of N.M. v. Lacey*, 107 N.M. 742, 764 P.2d 873 (1988) regarding that time limitation for enforcing a hospital lien.